### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

|   |   |
|---|---|
| LAJUAN & MYTESHA ROBINSON, *et al.*,   )<br>                                                                        )<br>                                   Plaintiffs,     )<br>                                                                        )<br>v.                                                                    )<br>                                                                        )   Case No. 99-1193-MLB<br>THE STATE OF KANSAS, *et al.*,                 )<br>                                                                        )<br>                                   Defendants.  )<br>                                                                        ) |

### RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT FILED BY GOVERNOR, KATHLEEN SEBELIUS

COME NOW the Plaintiffs, and pursuant to Fed.R.Civ.P. 56, submit this Response in Opposition to the Motion for Summary Judgment filed by Defendant, Governor Kathleen Sebelius. Defendant states in her Memorandum in Support that, "[d]iscovery has been completed." (Defendant's Memorandum, p. 1). This is true with a few exceptions. As indicated in the Pretrial Order submitted to the Court, some Defendants have not yet served responses to Interrogatories.

### RESPONSE TO DEFENDANT'S STATEMENT OF FACT

1. Uncontroverted.

2. Uncontroverted.

3. Uncontroverted.

4. Uncontroverted.

5. Uncontroverted.

6. Uncontroverted.

7. Controverted. Objection. Whether the Kansas legislature makes "suitable provision for financing public education" is at the very heart of this controversy, is an

F:\WICHITA\NICKELEA\PLEADING\0108233.01           1

ultimate issue to be decided in this case, and is a mixed issue of law and fact to be determined by this Court. Furthermore, the deposition testimony of Governor Sebelius cited by Defendant does not stand for the proposition that the legislature makes suitable provisions for financing, rather merely addresses whether Article 6 of the Kansas Constitution provides that the legislature is required to make suitable provisions for financing public education. The Governor testified, "I know that is a provision in the Constitution. I assume it is in Article 6." Inadmissible evidence is not a proper basis for the controlling facts on which a court bases its decision on a motion for summary judgment. *See* Fed.R.Civ.P. 56; *Gross v. Burggraf Construction Co.,* 53 F.3d 1531, 1541 (10th Cir. 1995) (a third party's description of a witnesses' supposed testimony is not suitable grist for the summary judgment mill).

In fact, Governor Sebelius testified in her deposition, when asked about the suitability of funding provided by the Kansas legislature for public education, that the amount of base state aid per pupil has not been adequately increased over the last ten years based on what inflationary pressures would demand. (Sebelius depo., 70:5-72:17 at Tab A).

    8.    Uncontroverted.

    9.    Controverted. The testimony cited of Commissioner Andy Tompkins cited by Defendant merely provides that, on behalf of the Kansas State Department of Education, Dale Dennis and Veryl Peter are the employees who oversee the actual distribution of funds based on the state formulas. The testimony does not stand for the proposition that Dale Dennis and Veryl Peter exclusively oversee the distribution of funds, and this statement is controverted to the extent it stands for that proposition. In

fact, Tompkins' cited testimony goes on to state that he understands the checks are requested from the Kansas State Department of Education and are "cut at the Treasurer's office, if I remember right." (Tompkins depo., 12:1-13:5 at Tab B).

10. Uncontroverted.

11. Controverted. The testimony cited by Defendant in support of this proposition is not on point. In fact, Commissioner Tompkins testified that he understands the checks are requested from the Kansas State Department of Education and are "cut at the Treasurer's office, if I remember right." (Tompkins' depo., 12:1-13:5 at Tab B).

12. Uncontroverted.

13. Uncontroverted.

14. Uncontroverted.

15. Uncontroverted.

## PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS

16. The Constitution of the State of Kansas grants the Governor supreme executive power of the state. Kan. Const. Art. 1, § 3.

17. The Governor of the State of Kansas is responsible for the enforcement of the laws of this state. Kan. Const. Art. 1, § 3.

18. The Governor of the State of Kansas took an oath of office in which she swore to uphold the Constitution of the United States and the Constitution of the State of Kansas. (Sebelius depo., 10:11-16 at Tab A).

19. The Kansas State Department of Education receives federal funds for public education in excess of $200 million annually. (Pochowski depo. 16:25-18:3 at Tab C).

20. The Chief Executive Officer of the state of Kansas, the Governor, is a necessary and required participant in the procedures followed by the State to obtain federal funding which is used to fund public education in the state of Kansas. (ST012510-ST012512; ST017431-ST017440 at Tab D).

21. The Governor of the state of Kansas has an education policy team to assist her develop education policy. (Tompkins depo. 74:17-75:10 at Tab B).

22. The Governor's education policy team, assisted by the Kansas State Department of Education, prepares a written report to assist the Governor in identifying school law policy issues. (Tompkins depo., 74:17-75:15 at Tab B) (Depo. Ex. 220 at Tab E).

23. The Governor has broad discretionary authority to allot funds, including funding for education, when state expenditures would otherwise exceed the state general fund. *See* K.S.A. § 75-3722; (A006467-A006469 at Tab F).

24. In 2002, the Kansas Governor used his allotment authority to cut education funding for FY 2003 by more than $17 million. (A006470-A006471 at Tab G).

## SUMMARY JUDGMENT STANDARD

Summary judgment is a drastic remedy and should not be awarded without extreme care. *Jones v. Nelson,* 484 F.2d 1165, 1168 (10th Cir. 1973). In order to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56. In reaching a decision with respect to a request for summary judgment the court must read the record in the light

most favorable to the party who defended against the motion. *White v. General Motors Corp., Inc.,* 908 F.2d 669, 670 (10th Cir. 1990), *cert. denied,* 498 U.S. 1069 (1991).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge, when ruling on a motion for summary judgment. The evidence of the nonmoving party is to be believed." *Copple v. City of Concordia,* 814 F. Supp. 1529, 1532 (D.Kan. 1993). All justifiable inferences are to be drawn in favor of the nonmovant. *Anderson,* 477 U.S. at 255, 106 S. Ct. 2505.

Defendant's Motion for Summary Judgment relies on misstatements of the fact and misrepresentations of the law. Plaintiffs will, at the very least, demonstrate that material issues of fact exist with respect to their claims against Defendant, Governor Kathleen Sebelius, to preclude summary judgment.

### SUMMARY JUDGMENT IS NOT PROPER WITH REGARD TO PLAINTIFFS' REQUEST FOR PROSPECTIVE INJUNCTIVE RELIEF AGAINST THE GOVERNOR OF THE STATE OF KANSAS.

#### Argument and Authorities

Pursuant to the Court's Scheduling Order (Doc. 81), "any motions to dismiss for propriety of the parties, or failure to state a claim upon which relief may be granted shall be filed by January 17, 2003." Scheduling Order at p. 5. The instant motion is a motion for failure to state a claim due to the alleged impropriety of the Governor, Kathleen Sebelius, as a party in this matter. The Governor did not raise this defense in her answers

to the Complaints filed herein and did not file a motion to dismiss alleging that she is an improper party prior to the Court's January, 2003 deadline. Defendant Governor Sebelius has waived her claim in this regard and should be estopped from asserting, in the eleventh hour, and in an untimely fashion, that she is not a proper party for the relief requested.

Defendant argues that Governor Kathleen Sebelius has no authority in the administration, enforcement and/or funding of the Kansas school finance scheme. This could not be further from the truth. It is the Governor who has supreme executive power of the state of Kansas. (Plaintiffs' Statement of Additional Facts, ¶ 16). The Governor is responsible for the enforcement of the laws of the state and took an oath of office swearing to uphold the U.S. and Kansas constitutions. (Plaintiffs' Statement of Additional Facts, ¶¶ 17, 18). The Governor can propose financing of the education system to the Kansas legislature and changes in the direction of the finance scheme and can make recommendations to the Kansas Board of Education also. (Defendant's Statement of Facts, ¶¶ 4, 6). The Governor can also veto legislative measures concerning the school funding scheme. (Defendant's Statement of Facts, ¶ 5). In addition, the Governor has broad discretionary allotment authority which can result and has resulted in cuts in education funding. (Plaintiffs' Statement of Additional Facts, ¶¶ 23, 24). Furthermore, the Governor's participation is required in the procedures undertaken by the state of Kansas in obtaining federal funding which is then used to fund local school districts. (Plaintiffs' Statement of Additional Facts, ¶¶ 19, 20).

The Plaintiffs do not dispute that the State Board of Education has the powers and plays the role enumerated by Defendant in her Motion for Summary Judgment. Plaintiffs

submit, however, that the Governor, in addition to the members of the State Board of Education and Commissioner of the State Department of Education, are all proper and necessary parties for the injunctive relief sought by Plaintiffs.

Defendant argues in her Memorandum that an analogous case, *Brown v. Board of Education*, resulted in the legal conclusion that the Governor of Kansas does not have authority to enforce the school laws of this state. This argument is entirely inaccurate. The *Brown* decision cited by Defendant is not analogous to the case at bar. *See Brown v. Board of Education of Topeka, Shawnee County, Kansas*, 892 F.2d 851 (10th Cir. 1989). The *Brown* decision of 1989 determined whether vestiges of *de jure* segregation in the Topeka, Kansas school district had been eliminated following the landmark *Brown v. Board of Education* case in 1954. Two of the issues in the appeal were whether the Governor of the State of Kansas and the Kansas State Board of Education were proper parties in the school desegregation action. *Id.* at 887-889. Pivotal in holding that neither the Governor nor the Kansas State Board of Education were proper parties to the action, as neither had any control over the local Topeka, Kansas school board, the Court found that no Kansas law was implicated in that litigation. *Id.* at 887.

To the contrary, because the Kansas school finance laws, U.S. and Kansas constitutional law are clearly at issue in this lawsuit, the Governor, who is responsible for the enforcement of the laws of this state, is a proper party. In fact, as the Defendant is well aware, this Court previously ruled that in an action asking that the Governor of the State of Kansas be prohibited from enforcing Kansas laws, namely school finance laws, the Governor is a proper party to such an action. *Robinson, et al. v. State of Kansas, et al.*, 117 F.Supp.2d 1124, 1138 (D.Kan. 2000). The Governor is a proper party to this

action.

As a practical matter, the Governor proposes and has influence in the creation of policy and legislation and can veto measures relating to the school funding scheme. (Defendant's Statement of Facts, ¶¶ 4 -6). If the Governor had no power where the challenged school funding laws were concerned, it would be nonsensical for the Governor to have assembled a team to study school law policy issues on her behalf. (*See* Plaintiffs' Statement of Additional Facts, ¶¶ 21-22).

Even more significantly, the Governor has broad discretion to allot funds when the budget will not balance. (Plaintiffs' Statement of Additional Facts, ¶ 23). This authority can and has be used to cut education funding, as when Governor Graves cut education funding by over $17 million in 2002. (Plaintiffs' Statement of Additional Facts, ¶ 24). This action by the Governor resulted in reducing the legislatively determined amount for base funding per pupil from $3890 to $3863. Clearly, the Governor has the power to unilaterally take money away from education that the legislature had given it. The injunctive relief Plaintiffs seek could include an order that the Governor not use her allotment power to further reduce education funding from the already under-funded system. Such relief would be appropriate and necessary to ensure that education funding is not further reduced.

## CONCLUSION

Governor Kathleen Sebelius is responsible for the enforcement of the laws, including the school finance laws. Furthermore, the Governor plays an important legislative and policy-making role in the creation of school funding law, can veto funding legislation and can take money away from education through her allotment authority.

Defendant's Motion for Summary Judgment must be denied.

          Respectfully submitted,


          **s/ Alan L. Rupe       [09/23/03]**
          Alan L. Rupe         #08914
          HUSCH & EPPENBERGER, LLC
          Epic Center, Suite 600
          301 N. Main
          Wichita, Kansas  67202
          (316) 264-3339
          (FAX) 264-0135

          and

          John S. Robb         #09844
          SOMERS, ROBB AND ROBB
          110 E. Broadway
          Box 544
          Newton, Kansas  67114-0544
          (316) 283-4560
          (FAX) 283-5049
          *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of September, 2003, I electronically filed the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to the following:

Dan Biles
danbiles@gbsrlaw.com

William Scott Hesse
hesses@ksag.org razoa@ksag.org;bushj@ksag.org;williamd@ksag.org

Kenneth L. Weltz
kweltz@lathropgage.com dbroksieck@lathropgage.com

I further certify that on the 23rd day of September, 2003 I served the foregoing document and the notice of electronic filing to the following non-CM/ECF participants via U.S. mail, postage prepaid:

Rodney J. Bieker
Department of Legal Services
Kansas Department of Education
120 East 10th Street
Topeka, KS 66612

David W. Davies
Kansas Attorney General – 10th Avenue
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS  66612-1597

**s/ Alan L. Rupe         [09/23/03]**
Alan L. Rupe