IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ROBINSON, et al.,               )
                                )
                 Plaintiffs,    )    **CIVIL ACTION**
                                )
v.                              )    No. 99-1193-MLB
                                )
THE STATE OF KANSAS, et al.,    )
                                )
                 Defendants.    )
_____ )

## MEMORANDUM AND ORDER

Before the court are the following:

1.  Plaintiffs' motion to dismiss without prejudice and for declaration of "prevailing party" status, and responsive briefing thereto (Docs. 245, 246, 247, 248, 254, 258, 259, 260, 268, 269, 270[1]);

2.  A motion to intervene by individual students and parents in the Shawnee Mission Unified School District No. 512 and Blue Valley Unified School District No. 229, and responsive briefing thereto (Docs. 231, 239, 240, 243);

3.  Defendant Kathleen Sebelius' motion for summary judgment, and responsive briefing thereto (Docs. 215, 216, 217, 220, 222);

4.  Defendant Lynn Jenkins' motion for summary judgment, and responsive briefing thereto (Docs. 213, 214, 218, 221, 223);

_____

[1]  Docket Entry 269 is a memorandum of law by amicus curiae Legislative Coordinating Council and Docket Entry 270 is plaintiffs' response to this amicus curiae brief.  The Legislative Coordinating Council consists of seven members of the Kansas Legislature, with the "power and authority to speak on behalf of the Legislature."  Neither submission is especially helpful, but the court has considered them nevertheless.

5.   Defendant Lynn Jenkins' motion to dismiss, and responsive briefing thereto (Docs. 144, 180);

6.   Defendants' motion to abstain (pursuant to <u>Pullman</u> and <u>Colorado River</u>), and responsive pleading thereto (Docs. 118, 127, 137); and

7.   Defendants' motion to dismiss claims related to local option budgets for lack of standing, and responsive briefing thereto (Docs. 115, 125, 133).

Plaintiffs' motion to dismiss without prejudice and for prevailing party status is GRANTED in part and DENIED in part. Because the resolution of plaintiffs' motion is dispositive of this case, all additional motions are rendered moot and are dismissed summarily.

## I.   PROCEDURAL HISTORY

This case stems from allegations that the State of Kansas' system for funding public education is flawed.  The complaint was filed on May 21, 1999 and the matter has undergone significant procedural manipulations in the seven and two-thirds years that have since passed. Plaintiffs initially challenged the system as discriminatory in violation of the Civil Rights Act of 1964 (42 U.S.C. § 2000d <u>et seq.</u>) and Rehabilitation Act of 1973 (29 U.S.C. § 701 <u>et seq.</u>), violative of the equal protection and substantive due process guarantees of the United States and Kansas Constitutions, and violative of the "adequacy" clause of the Kansas Constitution. (Doc. 1.)  The complaint named as defendants the State of Kansas, the Governor of the State of Kansas, the Treasurer of the State of Kansas, members of the Kansas State Board of Education, and the Kansas

Commissioner of Education, seeking prospective injunctive relief requiring defendants to revise Kansas' school finance laws so as to comply with applicable federal and state laws, as well as attorneys' fees and costs. (Doc. 109.)

The State of Kansas asserted Eleventh Amendment immunity from suit and moved to dismiss plaintiffs' complaint. (Doc. 14.) While that motion was pending, on December 14, 1999, plaintiffs filed a motion to dismiss their state law claims. (Doc. 41.) Plaintiffs concurrently filed suit in the District Court of Shawnee County, Kansas, asserting their claims arising under the Kansas Constitution.[2]

In a memorandum and order dated September 14, 2000, this court denied the motion to dismiss. (Doc. 50.) The State of Kansas appealed the court's decision and the case was stayed at defendant's request on November 8, 2000, pending a decision on the appeal. (Doc. 67.) On July 9, 2002, the Tenth Circuit Court of Appeals affirmed the court's decision. Robinson v. Kansas, 295 F.3d 1183 (10th Cir. 2002). The appeal mandate from the Tenth Circuit was filed November 4, 2002. (Doc. 69.)

Plaintiffs' complaint was amended on December 19, 2002 to add and delete plaintiffs, to add claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), and to

---

[2] The claims asserted under the Kansas Constitution are: 1) an alleged violation of article VI, section 6 of the Kansas Constitution which requires the Kansas legislature to provide suitable provisions for financing education; 2) an alleged violation of plaintiffs' right to equal protection as guaranteed by sections 1 and 2 of the Bill of Rights to the Kansas Constitution; and 3) an alleged violation of plaintiffs' right to substantive due process as guaranteed by Sections 1, 2, and 18 of the Bill of Rights to the Kansas Constitution. Plaintiffs asserted no § 1988(b) qualifying claims in the state court.

formally remove the claim brought under the Kansas Constitution. (Doc. 79.)  The first amended complaint also changed the prospective injunctive relief requested and plaintiffs thereafter sought an injunctive order prohibiting defendants from enforcing and distributing funds in the school finance scheme.  (Doc. 79 at 30.) The complaint was amended one final time on February 5, 2003 to add additional claims under the Equal Education Opportunity Act (20 U.S.C. § 1703(f)) and claims under 42 U.S.C. § 1983 challenging the manner in which the State of Kansas funds education for students whose native language is not English.  (Doc. 109.)

In the state court litigation, plaintiffs requested the same prospective injunctive relief, attorneys' fees and costs as was requested in the federal court litigation.  Following a bench trial, the state court entered judgment for plaintiffs and found the State of Kansas' system for funding public education violated the equal protection, due process, and "adequacy" guarantees of the Kansas Constitution.  The court did not issue a final order but, rather, gave the Kansas legislature the opportunity to correct the flaws in the funding system.  See Montoy v. State, No. 99 C 1738, 2003 WL 22902963 (Shawnee County Kan. Dist. Ct. Dec. 2, 2003).

On January 12, 2004, the federal court litigation was again stayed, pending final resolution of the state court litigation.  (Doc. 245 at 3.)  Over the course of the federal court litigation, various motions to dismiss and motions for summary judgment were filed by defendants.  Based on the various stays and other agreements of the parties, this court never ruled on any of those motions and has never addressed the merits of any of plaintiffs' claims.

-4-

On January 3, 2005, the Kansas Supreme Court affirmed the decision of the Shawnee County District Court that the funding system violated the "adequacy" clause of the Kansas Constitution but found the equal protection and due process guarantees of the Kansas Constitution had not been violated.[3] Montoy v. State, 278 Kan. 769, 120 P.3d 306 (2005). The Kansas Supreme Court withheld issuing a mandate and retained jurisdiction in order to provide the Kansas legislature a "reasonable time to correct the constitutional infirmity" in the funding system. Id. at 776, 120 P.3d at 310.

In the 2005 legislative session, the State of Kansas adopted changes to the public school funding system, but the Kansas Supreme Court held that these changes were insufficient to remedy the constitutional deficiencies. The Kansas Supreme Court directed the Kansas legislature to increase funding by July 1, 2005 for the 2004-2005 school year and retained jurisdiction to provide the State of Kansas the 2006 legislative session to comply with the Kansas Constitutional mandates for the 2006-2007 school year. Montoy v. State, 279 Kan. 817, 846, 112 P.3d 923, 941 (2005).

Following a special legislative session in the summer of 2005, the State of Kansas increased funding for the 2004-2005 school year. In the 2006 legislative session, the State of Kansas enacted a new system of funding public education. The new law, Senate Bill 549,

---

[3] The Kansas Supreme Court actually stated that the school funding system was not violative of equal protection and due process under either the Kansas Constitution or the United States Constitution. 278 Kan. 769, 120 P.3d at 308. The Kansas Supreme Court apparently "over-spoke" however, because only equal protection and due process violations under the Kansas Constitution were litigated in the lower state court. See Montoy v. State, 275 Kan. 145, 146, 62 P.3d 228, 230 (2003).

provides an additional $466.2 million for public education over a three year period. Combined with the previous legislative enactments, the State of Kansas increased public education funding by $755.6 million per year. Following these legislative enactments, the Kansas Supreme Court held the defendants to be in "substantial compliance" with its previous orders and remanded the case to the district court with orders to dismiss the litigation. <u>Montoy v. State</u>, 282 Kan. 9, 138 P.3d 755 (2006).

## II.  MOTION TO DISMISS

Plaintiffs assert that the relief they originally sought in this litigation has been achieved. Plaintiffs, therefore, request "an order, pursuant to Federal Rule of Civil Procedure 41(b),[4] dismissing the present litigation without prejudice." (Doc. 245 at 5.)  In support, plaintiffs assert that because defendants have already been required by the Kansas Supreme Court to provide relief, resolution of plaintiffs' federal claims is "unnecessary."

Rule 41(a)(2) states:

> (a) Voluntary Dismissal: Effect Thereof.
>
> . . .
>
> (2) By Order of Court.  Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the

---

[4]  Plaintiffs identify Federal Rule of Civil Procedure 41(b) in their request for dismissal without prejudice. (Doc. 245.)  Rule 41(b) governs <u>in</u>voluntary dismissals, upon motion by a defendant, for a plaintiff's failure to prosecute or comply with rules or an order of the court.  In a later filing, plaintiffs also mischaracterize their request and state they seek dismissal with prejudice. (Doc. 268 at 1.)

These are obvious typographical errors by plaintiffs and the court will interpret their request as one under Rule 41(a), governing voluntary dismissals by order of the court, without prejudice.

> plaintiff's instance save upon order of the court
> and upon such terms and conditions as the court
> deems proper.  If a counterclaim has been pleaded
> by a defendant prior to the service upon
> defendant of the plaintiff's motion to dismiss,
> the action shall not be dismissed against the
> defendant's objection unless the counterclaim can
> remain pending for independent adjudication by
> the court.  Unless otherwise specified in the
> order, a dismissal under this paragraph is
> without prejudice.

Rule 41(a)(2) permits a plaintiff to move the court to dismiss an action, without temporal or procedural restriction, and "upon such terms and conditions as the court deems proper."  Fed. R. Civ. P. 41(a)(2).  The rule is designed primarily to prevent voluntary dismissals which unfairly affect the opposing party, but "absent legal prejudice to the defendant, the district court normally should grant such a dismissal."  <u>Ohlander v. Larson</u>, 114 F.3d 1531, 1537 (10th Cir. 1997).  The Tenth Circuit recently discussed the phrase "legal prejudice" and stated:

> Prejudice does not arise simply because a second
> action has been or may be filed against the
> defendant, which is often the whole point in
> dismissing a case without prejudice.  Rather,
> prejudice is a function of other, practical
> factors including: the opposing party's effort
> and expense in preparing for trial; excessive
> delay and lack of diligence on the part of the
> movant; insufficient explanation of the need for
> a dismissal; and the present stage of the
> litigation.  These factors are neither exhaustive
> nor conclusive; the court should be sensitive to
> other considerations unique to the circumstances
> of each case.  And, in reaching its conclusion,
> the court should endeavor to insure substantial
> justice is afforded both parties, and therefore
> the court must consider the equities not only
> facing the defendant, but also those facing the
> plaintiff.

<u>Brown v. Blake</u>, 413 F.3d 1121, 1124 (10th Cir. 2005) (internal quotations and citations omitted).

-7-

Defendant Sebelius responds to plaintiffs' motion by asking the court to grant her motion for summary judgment, previously filed in this case.   In the alternative, Sebelius asks the court to dismiss plaintiffs' claims, with prejudice, as to the governor of the State of Kansas.   (Doc. 247 at 3.)   Defendant Jenkins responds by also requesting the court to first rule on her previously filed motion for summary judgment and dismiss her from the case before addressing plaintiffs' motion to dismiss.   (Doc. 254 at 2.)   Plaintiffs reply to both defendants' responses merely by stating that because defendants' motions for summary judgment have not been granted, defendants Sebelius and Jenkins have stated no basis for dismissal with prejudice.   (Doc. 258 at 2.)   Defendant State of Kansas asks for dismissal with prejudice because plaintiffs have contended that resolution of their federal claims is unnecessary. (Doc. 259 at 29.) The Kansas State Board of Education defendants agree to dismissal of plaintiffs' claims without prejudice.   (Doc. 260 at 1.)

The court finds that dismissal without prejudice is appropriate. No defendant has shown the requisite legal prejudice for opposing a dismissal of plaintiffs' claims without prejudice.   In fact, the opposing defendants have not argued legal prejudice at all.   For example, defendant Sebelius and defendant State of Kansas admit that dismissal is appropriate (Doc. 258 at 3; Doc. 259 at 29), but neither party addresses its opposition to dismissal without prejudice through a showing of legal prejudice in any manner.

Although the court realizes the significant amount of work already expended by all parties in this case, plaintiffs have not engaged in any actions that would cause legal prejudice to defendants.

-8-

Defendants have alleged no excessive delay or lack of diligence on the part of plaintiffs. Plaintiffs have adequately explained their basis for requesting dismissal of their claims. In addition, this federal court litigation has been inactive for some time. That portion of plaintiffs' motion seeking dismissal of this case, without prejudice, is GRANTED.

## III. "PREVAILING PARTY" STATUS

42 U.S.C. § 1988(b) states:

> In an action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . .

Plaintiffs argue that because they succeeded on the merits in the state court action, on claims they allege mirror the federal court claims, they should be deemed the "prevailing party" for purposes of § 1988(b) and awarded reasonable attorneys' fees and costs. (Doc. 245.) Defendants oppose plaintiffs' status as prevailing party.

In order to make a complete record, the court will discuss the majority of plaintiffs' and defendants' arguments for and against prevailing party status. However, the court's discussion begins and ends with the following overriding factors that the court finds significant: this court has <u>never</u> made a ruling in plaintiffs' favor on <u>any</u> substantive issue and the Kansas Constitution claim on which plaintiffs ultimately prevailed in state court was voluntarily dismissed by plaintiffs from this case six months after this case was

filed.

A.   DEFENDANTS KATHLEEN SEBELIUS AND LYNN JENKINS

In the proceedings before the District Court of Shawnee County, defendants Sebelius and Jenkins were dismissed from the state court litigation with prejudice.  Defendants Sebelius and Jenkins point to a letter decision dated September 8, 2003 by the Shawnee County District Court dismissing both defendants.  (Docs. 247, 254.) Plaintiffs agree that, because both Sebelius and Jenkins were dismissed from the state court litigation with prejudice, plaintiffs prevailed on no claims against either of them.  Plaintiffs therefore concede they should not be granted prevailing party status under 42 U.S.C. § 1988(b) as to these two defendants.  (Doc. 258.)  As a result, plaintiffs' motion for declaration of prevailing party status as to defendants Sebelius and Jenkins is DENIED.

B.   DEFENDANT STATE OF KANSAS AND DEFENDANTS ASSOCIATED WITH THE KANSAS STATE BOARD OF EDUCATION

Plaintiffs believe that because they "prevailed and secured the benefit they sought in this litigation" in the state court proceedings, they should be considered the prevailing party and awarded attorneys' fees by this court.  (Doc. 246 at 11.)  Defendant State of Kansas and defendants associated with the Kansas State Board of Education (hereinafter referred to in this section as "defendants") oppose the declaration by this court of plaintiffs as prevailing parties and assert § 1988(b) is simply inapplicable to the case at hand.  Defendants argue plaintiffs' success in state court was on a related, but substantially different, claim than those in this case and that plaintiffs have not prevailed either in this court or in

-10-

state court on any claim entitling them to attorneys' fees under §
1988(b).[5]

    1.  General Standards Under § 1988(b)

    Although an award of attorneys' fees under 42 U.S.C. § 1988(b)
is discretionary, the Supreme Court has stated that the prevailing
party in a civil rights case "should ordinarily recover an attorney's
fee unless special circumstances would render such an award unjust."
Newman v. Piggie Park Enterp. Inc., 390 U.S. 400, 402 (1968);
Blanchard v. Bergeron, 489 U.S. 87, 89 n.1 (1989) (affirming this
statement from Newman).  To be a prevailing party, the plaintiff "must
obtain at least some relief on the merits of his claim."  Farrar v.
Hobby, 506 U.S. 103, 113 (1992).  It has also been said that a
plaintiff is a prevailing party if he or she succeeds "on any
significant issue in litigation which achieves some of the benefit the

---

    [5]  In the three complaints filed in this court, plaintiffs
variously asserted a multitude of claims falling under the umbrella
of § 1988(b).  These claims are: Count 1 - 42 U.S.C. § 1983 and Title
VI Disparate Impact-Race; Count 2 - 42 U.S.C. § 1983 and Title VI
Disparate Impact-National Origin; Count 3 - Title VI Intentional
Discrimination-Race; Count 4 - Title VI Intentional Discrimination-
National Origin; Count 5 - 42 U.S.C. § 1983 and Title VI Intentional
Discrimination-Race; Count 6 - 42 U.S.C. § 1983 and Title VI
Intentional Discrimination-National Origin; Count 7 - 42 U.S.C. § 1983
and Equal Protection-Race; Count 8 - 42 U.S.C. § 1983 and Equal
Protection-National Origin; Count 9 - 42 U.S.C. § 1983 and
Rehabilitation Act Disability Discrimination; Count 11 - 42 U.S.C. §
1983 and Rehabilitation Act Disparate Impact; Count 13 - 42 U.S.C. §
1983 and Americans with Disabilities Act Disparate Impact; Count 18 -
42 U.S.C. § 1983 and 20 U.S.C. § 1703 Disparate Treatment-National
Origin; and Count 19 - 42 U.S.C. § 1983 and 20 U.S.C. § 1703 Disparate
Impact-National Origin.  (See Doc. 109.)
    Not all of these claims were brought against all defendants but
the parties do not contest that at least some claims falling under the
umbrella of § 1988(b) were brought against each defendant in the
federal court litigation.  Because there are various claims that
qualify for attorneys' fees under § 1988(b), the court refers to them
generically as "§ 1988(b) qualifying claims."

parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Supreme Court has further clarified that "a party is a prevailing party for the purpose of awarding attorneys' fees under § 1988 only if he has obtained a judgment on the merits, a consent decree, or some other settlement materially altering the legal relationship of the parties." Bell v. Bd. of County Comm'rs of Jefferson County, 451 F.3d 1097, 1102 (10th Cir. 2006)(citing Buckhannon Bd. & Care Home, Inc. v. West Virginia, 532 U.S. 598, 602-04 (2001)). In Buckhannon, the Supreme Court also emphasized the "need for a 'judicial imprimatur' on the changed relationship of the parties." Bell, 451 F.3d at 1102 (citing Buckhannon, 532 U.S. at 604, 604 n.7).

In this case, and in the state court litigation, plaintiffs were not a prevailing party on a civil rights claim listed in § 1988(b).[6] Rather, plaintiffs ultimately prevailed on a claim under the Kansas Constitution mandating a "suitable provision for finance of the educational interests of the state." Kan. Const. art. VI, § 6. Plaintiffs did, however, succeed in the broad sense that they achieved in the state court litigation the benefit they sought in the federal court litigation--namely, injunctive relief from the enforcement of the school funding laws and distribution of school funding in manners violating the law. It is also true that plaintiffs succeeded in obtaining a judicial imprimatur on their claim; albeit that that

---

[6] The only factual or legal issue that was ever decided in the federal court litigation was the matter of the State of Kansas' Eleventh Amendment immunity from suit. Plaintiffs make no argument that the immunity issue somehow gives them prevailing party status for § 1988(b).

-12-

judicial imprimatur came from the Kansas courts on a claim under the Kansas Constitution.  Presumably, plaintiffs would assert that under the Maher line of cases, discussed infra, the federal and state cases thus arose out of a "common nucleus of operative facts" and that there is no need for further discussion of the facts and the case law.  The Maher line notwithstanding, there is a large body of case law regarding § 1988(b) which militates against a simplistic argument that Maher makes an award of fees "automatic" when the federal and state claims (and, as here, cases) share a factual basis.

2.  Plaintiffs' Argument for Application of § 1988(b)

Plaintiffs argue that because they succeeded on the merits in the state court litigation on what they assert is a related, pendent claim, they should be considered prevailing parties.[7]  The Supreme Court in Maher v. Gagne, 448 U.S. 122, 133 n.15 (1980), stated: "The legislative history [of § 1988] makes it clear that Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which plaintiff prevailed is one for which fees cannot be awarded under the Act."  Where a substantial constitutional claim and a state-law claim are based on a common nucleus of operative facts, and a court declines to decide the constitutional question but rules in favor of the plaintiff on the alternate state claim, the plaintiff will be considered the prevailing party.  Maher, 448 U.S. at 132; Plott v. Griffiths, 938 F.2d 164 (10th Cir. 1991).  In Plott, the Tenth Circuit stated:

Federal     appellate     courts     confronted     with

---

[7]  Plaintiffs voluntarily dismissed from the federal court litigation their sole "pendent" claim in December 1999.

> analogous cases involving constitutional and
> state law claims have held that, under <u>Maher</u>,
> when a plaintiff raises both a substantial
> constitutional claim and a pendent state law
> claim which is closely factually related, and the
> plaintiff prevails on the state claim, he is
> entitled to an award of attorney's fees under
> section 1988 even though the district court does
> not address the constitutional claim.  For
> attorney's fees to be awarded, the constitutional
> claim must be substantial and both the statutory
> and constitutional claims must arise out of a
> common nucleus of operative facts.

<u>Plott</u>, 938 F.2d at 168 (internal citations omitted).

Therefore, at a minimum, for attorneys' fees to be awarded under <u>Maher</u>, the § 1988(b) qualifying claim must be substantial, and both the state and § 1988(b) qualifying claims must arise out of a common nucleus of operative facts.  A claim is considered "substantial" unless it is without merit, wholly frivolous, or barred by prior Supreme Court decisions.  <u>Plott</u>, 938 F.2d at 167.  Here, there is no dispute over whether plaintiffs' § 1988(b) qualifying claims are substantial; the debate centers on whether the plaintiffs' federal court and state court claims arose out of a common nucleus of operative facts.

Defendants argue the claim on which plaintiffs prevailed in the state court litigation is not "closely factually related" and does not "arise out of a common nucleus of operative facts" with the federal court § 1988(b) qualifying claims.  Defendants point out that the claim upon which plaintiffs prevailed in the state court litigation was under article VI, section 6 of the Kansas Constitution. Defendants present several arguments that this Kansas constitutional claim is not based on a "common nucleus of operative fact." First, in the federal court litigation, plaintiffs asserted the state school

-14-

funding scheme discriminated against Kansas students who are African-American, Hispanic-American, Asian-American, disabled, or limited English speakers, or discriminated on the basis of national origin. In contrast, defendants point out that in the state court litigation, plaintiffs asserted the school funding scheme resulted in inadequate educations for all children who live in particular districts. Second, defendants argue that plaintiffs in the federal court litigation are all members of protected classes whereas the plaintiffs in the state court litigation are not all individuals and are not all members of a constitutionally protected class.[8]  Third, defendants assert that the elements of proof necessary for success on the § 1988(b) qualifying claims in the federal court litigation are different from the elements of proof necessary for success on the claim plaintiffs prevailed on in the state court litigation.  Because the claims in the federal and state courts are based on different elements, defendants argue they "are dependent on a showing (and happening) of different

---

        [8]  As a basic, but fundamental matter, the court notes that the plaintiffs in the federal court litigation are not the same as the successful plaintiffs in the state court litigation.  This is noted because § 1988(b) awards attorneys' fees to prevailing parties, not prevailing attorneys.  Compare Doc. 109 (second amended complaint describing plaintiffs in the federal court action) with Montoy v. State, No. 99 C 1738, 2003 WL 22902963, at *25 (Shawnee County Kan. Dist. Ct. Dec. 2, 2003) (describing the parties as "Kansas school children," of which some are members of protected classes and two Kansas school districts)(emphasis added); see also Doc. 127 at 7 (assertion from plaintiffs that "the parties in the state litigation are significantly different from those in the federal litigation.  Two under-financed Kansas public school districts are plaintiffs in the state court case, but not in the federal case. . . .  In addition, because of the substantive differences between the two cases, the state case includes as plaintiffs Kansas public school students who are not members of any protected minority class . . . while the Plaintiffs in the federal case are all members of one or more traditional protected class[es] pursuant to federal law.").

facts (e.g., funding levels, components of the financing formula, accreditation standards versus evidence of discriminatory intent, evidence of discrimination, and proof of federal financial assistance)" and therefore cannot be based on a common nucleus of operative facts as the § 1988(b) qualifying claims in the federal court litigation. (Doc. 259 at 14.) Fourth, defendants point to plaintiffs' statement in its motion to abstain that the "issues before this Court are wholly different from those being litigated . . ." in the state court as an admission that the cases do not arise out of a common nucleus of operative facts.

Plaintiffs' overall response to defendants' points of argument is: "The dispositive issue . . . is whether Plaintiffs prevailed on a state law claim that is factually and legally interconnected to Plaintiffs' Section 1983 causes of action." (Doc. 268 at 9.)

A review of the winning claim in the state court litigation as compared to the § 1988(b) qualifying claims in the federal court litigation shows that the two claims are not "factually and legally interconnected." Williams v. Hanover Hous. Auth., 113 F.3d 1294, 1298 (1st Cir. 1997). The state court litigation included two school districts as plaintiffs that are not plaintiffs in the federal court litigation. The state court litigation also included student plaintiffs who were not members of a protected class, while the federal court litigation was based only on claims from members of protected classes. The state court claim required proof by plaintiffs that the school finance formulas are a "suitable provision for finance of public schools." Montoy v. State, 278 Kan. 769, 120 P.2d 306, 309 (2005). To make this finding, the state court looked at evidence of

-16-

societal changes in Kansas schoolchildren (e.g., the number of Kansas public school students qualifying for free or reduced-price lunches, the number of Kansas public school students with limited proficiency in English, the change in the number of immigrants in Kansas, and admission standards in Kansas' higher education institutions) and corresponding statutory provisions (e.g., accreditation and performance standards).  The Kansas Supreme Court stated:

> The concept of "suitable provision for finance" encompasses many aspects.  First and perhaps foremost it must reflect a level of funding which meets the constitutional requirement that '[t]he legislature shall provide for intellectual, educational, vocational and scientific <u>improvement</u> by establishing and maintaining public schools. . . .' (Emphasis added.)  Kan. Const. art. 6, § 1.  The Kansas Constitution thus imposes a mandate that our educational system cannot be static or regressive but must be one which 'advance[s] to a better quality or state.' See Webster's II New College Dictionary 557 (1999) (defining 'improve')  In apparent recognition of this concept, the legislature incorporated performance levels and standards into the [school funding laws] and, . . . has retained a provision which requires the State Board of Education to design and adopt a school performance accreditation system 'based upon improvement in performance that reflects high academic standards and is measurable.'  K.S.A. 72-6439(a).  Moreover, the legislature mandated standards for individual and school performance levels 'the achievement of which represents excellence in the academic area at the grade level to which the assessment applies.'  K.S.A. 72-6439©.
>
> Through these provisions, the legislature has imposed criteria for determining whether it has made suitable provision for the finance of education: Do the schools meet the accreditation requirements and are students achieving an 'improvement in performance that reflects high academic standards and is measurable'?  K.S.A. 72-6439(a).
>
> . . . .

> Furthermore, in determining if the legislature has made suitable provision for the finance of public education, there are other factors to be considered in addition to whether students are provided a suitable education. Specifically, the district court found that the financing formula was not based upon actual costs to educate children but was instead based on former spending levels and political compromise.

Based on the above, it is clear that the claim on which plaintiffs prevailed in the state court litigation was not closely factually related to the federal § 1988(b) qualifying claims. Plaintiffs' federal claims, at a minimum, required proof that the treatment of plaintiffs was disparate from the treatment of Kansas schoolchildren who were not members of a protected class. This is wholly different from the factors discussed by the Kansas Supreme Court.

The two claims are not similar enough that it can be said they arise out of a "common nucleus of operative fact." See Garcia v. Wyckoff, 615 F. Supp. 217, 222 (D. Colo. 1985) abrogated on other grounds by Hall v. Lopez, 823 F. Supp. 857, 865 (D. Colo. 1993) (finding no "common nucleus of operative fact" when the connection between the federal and state claims was "at best tangential"). Plaintiffs were essentially seeking the same relief (i.e., plaintiffs sought revision of Kansas' school finance laws in both the state court litigation and the federal court litigation) but they were seeking that relief through different legal claims requiring proof of different facts. Cf. Plott, 938 F.2d at 168 (plaintiff found to be prevailing party based on success on state claim based in part on fact that plaintiff was seeking the same relief from state and federal claims).

-18-

3.  Distinguishing Cases Cited By Plaintiffs

In addition to failing to persuade the court that the Maher line of cases[9] supports their claim for prevailing party status, the additional cases cited by plaintiffs are distinguishable from the procedural facts of the current litigation.  Plaintiffs cite Williams v. Hanover Hous. Auth, 113 F.3d 1294 (1st Cir. 1997) for the proposition that parties who prevail on a pendent state law claim are prevailing parties pursuant to § 1988(b), even when the pendent state law claim is actually decided in state, as opposed to federal court. In Williams, both a state and federal claim were brought in federal court.  The state issue was decided in the plaintiff's favor by that same federal court.  The federal court found that resolution of the federal claim brought under § 1983 was unnecessary and dismissed it as moot.  The First Circuit ultimately determined that the plaintiff should be awarded prevailing party status because the state and federal claims were closely entwined.  Williams is distinguishable, however, because in addition to the finding, supra, that the state and federal claims are not closely entwined, in this litigation this court did not decide the state constitutional claim--plaintiffs prevailed in the state court litigation, not the federal court litigation.  This court, unlike the federal court in Williams, did not rule on the state claim.

Plaintiffs also cite the case of Carreras v. City of Anaheim, 768 F.2d 1039 (9th Cir. 1985), for the same proposition.  In Carreras, a

---

[9]  Maher was resolved exclusively in federal court.  Maine v. Thiboutot, 448 U.S. 1 (1980), decided the same day as Maher and cited therein, was resolved exclusively in state court.

federal claim and a pendent state claim were filed in federal court. The plaintiffs prevailed only on the pendent state claim. The court of appeals found that the plaintiffs were a prevailing party because the district court properly exercised jurisdiction over the pendent state law claim--i.e., the state law claim arose out of a common nucleus of operative fact and the federal claim was substantial. In this case, however, as discussed above, the state claim on which plaintiffs prevailed in state court does not arise out of common facts with the federal claim. Moreover, this court decided nothing with respect to plaintiffs' claims, state or federal.

Plaintiffs next cite the case of Maiden v. Manchester, No. Civ. 03-190-SM, 2004 WL 1905721 (D.N.H. 2004). In Maiden, as in Williams, a federal claim and a pendent state claim were filed in federal district court. The federal district court did not reach the federal claim because the state claim was dispositive of the ultimate issue before it. The federal court found that the state and federal claims were based on the same facts and sought the same relief and awarded the plaintiff prevailing party status. Maiden is also distinguishable, because, as discussed above, the Kansas Constitution article VI, section 6 claim and plaintiffs' federal § 1988(b) qualifying claims brought in this court do not arise out of a "common nucleus of operative fact."

Plaintiffs cite Lampher v. Zagel, 755 F.2d 99 (7th Cir. 1985), for the proposition that a party who prevails on a related and dispositive state law claim in state court is a prevailing party under § 1988(b). In Lampher, a federal claim was brought in federal court attacking a state statute. In a subsequently filed state case, the

state court declared the statute unconstitutional.  According to the opinion: "after they won that suit, plaintiffs returned to federal court and litigated the constitutional question anew there, persuading [the federal judge] also to hold the statute unconstitutional."  Id. at 102.  Plaintiffs were awarded prevailing party status and attorneys' fees by the federal court, although it is unclear whether the fees claimed were for work done in the state case, or the federal case, or both.  But the clear distinction between Lampher and this case is that plaintiffs never prevailed on their § 1988(b) qualifying claim (or any claim, for that matter) in this court or in state court.[10]

Plaintiffs next cite the case of Mease v. City of Shawnee, No. 03-2041, 2004 WL 1004904 (D. Kan. 2004), but again, the procedural facts of Mease are not comparable.  In Mease, the federal court cited Lampher with approval and refused to reduce a fee award "even if a portion of time attributable to the instant case benefitted the plaintiffs" in separate state court litigation.  However, in Mease, the state court litigation and the federal court litigation tested the same constitutional question and the plaintiff prevailed in both the state court litigation and the federal court litigation.

_____

[10]  The Lampher case may be the source of plaintiffs' contention that they were "forced" to litigate their state law claims in state court rather than as one suit in federal court.  See id. at 102-03 (describing a "maneuver" by the defendant wherein he filed in state court and then had the federal litigation stayed while the state court resolved the issue which "forced the plaintiffs to litigate the matter in the [state court] rather than in their chosen forum").  In this case, however, plaintiffs were not forced into state court. Plaintiffs voluntarily moved to dismiss their state claim in the federal court litigation (Doc. 41) and this court granted that request (Doc. 44).

Plaintiffs contend they should be awarded prevailing party status based on case law that holds that fees spent on a related state court proceeding are recoverable by a prevailing party in a federal court proceeding.  As an initial matter, the court notes once again that plaintiffs are <u>not</u> the prevailing party in a federal court proceeding. The case law is distinguishable for additional reasons as well.  In <u>Bartholomew v. Watson</u>, 665 F.2d 910, 912-14 (9th Cir. 1982), plaintiffs filed a § 1983 claim in federal court.  The state defendants requested a stay in the federal court proceedings so a state court could determine whether the challenged regulations complied with a new state law.  By stipulation, the parties agreed to go to state court and litigate the state action and reserved the right to come back to the federal court.  The parties also agreed that the state court's determination would not be considered res judicata on the federal court litigation.  The plaintiffs lost their action in state court but prevailed in the federal court action on the same claim.  The plaintiffs were awarded prevailing party status and given attorneys' fees, even for the work done in the state court litigation, because 1) the state court litigation was "initiated and pursued solely because of the filing" of the federal claim in federal court and 2) the issues in the state court litigation were substantially the same as the § 1983 issues and were an "essential step" in the federal claim.  Of course, here, the court has already determined that the issues in the state court litigation and federal court litigation are not substantially the same.  Also, in this case, the court decided to informally stay the federal proceedings only after the state court had issued a judgment on plaintiffs' state claim; there was never a

determination that the state court issues were an "essential step" to resolution of the issues in this case and they would not have been in any event.

Finally, plaintiffs cite <u>Exeter-West Greenwich Reg'l Sch. v. Pontarelli</u>, 788 F.2d 47 (1st Cir. 1986), for the proposition that when a state court determination on a question of state law renders a federal court's determination on a question of federal law moot, then the party in the state court litigation is the prevailing party for purposes of § 1988(b). In <u>Exeter-West</u>, the plaintiff filed a federal claim in federal court. The federal court certified a question to the state court regarding an interpretation of state law. The state's high court agreed to hear the issue and the federal court abstained per <u>Pullman</u>. The state court found for the plaintiff and the federal court subsequently dismissed the federal action as moot. The plaintiffs nevertheless were awarded prevailing party status because the federal court found they had achieved the result desired by filing the federal case and the facts tried in the state court litigation arose from the same nucleus of operative facts. The issue certified to the state court was part of the case brought by plaintiffs and was therefore "in litigation" in the federal court.

In this case, no party ever requested certification, undoubtedly because there was no state law issue that was necessary to be certified for resolution of the federal court § 1988(b) qualifying claims. The claim tried in the state court litigation was entirely separate from the claims remaining in the federal litigation. As pointed out many times, plaintiffs litigated their claims in state court without intervention by the federal court. Indeed, there is

-23-

nothing to indicate that the pendency of this case had any bearing whatsoever on the issues in the Kansas district and Supreme Court cases.

    4. Additional Support for Defendants' Position

    Although the parties do not specifically discuss it, there are Tenth Circuit cases dealing with the so-called "catalyst rule" which is explained as follows:

> [W]hen no judgment on the merits [has] been entered on the controversy involved, a party may nonetheless be entitled to any attorney's fee [following the Maher precedent] but he must show that the lawsuit is causally linked to securing the relief obtained, and that the defendant's conduct in response to the lawsuit was required by law.

Am. Council of the Blind of Colo., Inc. v. Romer, 992 F.2d 249, 250 (10th Cir. 1993)(internal quotations and citations omitted). See also Kansas Health Care Association, Inc. v. Kansas Department of Social & Rehabilitation Services, 31 F.3d 1052, 1053-54 (10th Cir. 1994), which goes into more detail regarding a plaintiff's burden:

> A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. A plaintiff may prevail in the absence of a judicial determination or full litigation. Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). The test for determining whether a plaintiff is a prevailing party when there has been no adjudication was recently set forth in J & J Anderson Inc. v. Town of Erie, 767 F.2d 1469, 1475 (10th Cir. 1985), and contains two elements which must be satisfied. The plaintiff must demonstrate that his lawsuit is linked causally to the relief obtained, i.e. the suit must be a "substantial factor or a significant catalyst" in prompting the defendants to act or cease their behavior. He must also demonstrate that the defendant's conduct in response to the lawsuit was required by the Constitution or federal law, i.e. the defendant's actions must be legally required.

-24-

The first element in an analysis of whether the plaintiff is a prevailing party, involves a factual inquiry; whether the lawsuit caused the defendant to act. The trial court is in the best position to evaluate this issue because it has dealt with the parties and can evaluate the strengths and weaknesses of the case. If the "prevailing party" issue turns on the first element, then the appellate court should apply the clearly erroneous standard of review. The second element primarily requires legal analysis, although the facts certainly bear on the outcome. Because this second element stresses legal analysis, if the "prevailing party" issue is resolved by whether a defendants' actions are legally required, then de novo review is appropriate. Supre v. Ricketts, 792 F.2d 958, 962 (10th Cir. 1986); Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir. 1978).

. . .

In a well reasoned opinion, the district court denied the plaintiffs' petition for attorneys' fees, holding that the Tenth Circuit has adopted a two part test:

> The plaintiff must demonstrate that his lawsuit is linked causally to the relief obtained, i.e. the suit must be a 'substantial factor or a significant catalyst' in prompting the defendants to act or cease their behavior. He must also demonstrate that the defendant's conduct in response to the lawsuit was required by the Constitution or federal law, i.e. the defendant's actions must be legally required. Supre v. Ricketts, 792 F.2d 958, 962 (10th Cir.1986) (quoting J & J Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1475 (10th Cir.1985)).

This test was first set forth in Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir.1978). The Tenth Circuit stated:

> The purpose of the Nadeau test is to ensure, in cases where a concession of defeat might be inferred from defendant's conduct, that the conduct was actually brought about by the lawsuit. Attorney's fees should be

-25-

> awarded only when the suit brought about such conduct, and not when the defendant acted supererogatorily. <u>Dahlem v. Board of Educ. of Denver Public Schools</u>, 901 F.2d 1508, 1512, n. 3 (10th Cir.1990).
>
> <u>Kansas Health Care Ass'n v. Kansas Dept. of Social and Rehabilitation Services</u>, 826 F.Supp. 389, 390 (D.Kan.1993).

Here, there is absolutely no evidence that this federal case was a significant catalyst in prompting defendants to do <u>anything</u>.

Furthermore, cases in which the Supreme Court has awarded "prevailing party" status under a statute similar to § 1988(b)[11] for work done in the case in state administrative proceedings also show the narrow circumstances for federal courts awarding attorneys' fees for work done in state proceedings. In <u>New York Gaslight Club</u>, 447 U.S. 54, 71 (1980), the plaintiff brought a federal court action under Title VII for refusal to hire based on race to recover attorneys' fees for legal work done in state administrative and judicial proceedings. The plaintiff ultimately prevailed in the state administrative proceedings and the Court allowed attorneys fees. The current case, differs, however, because in <u>New York Gaslight</u>, the prevailing plaintiff was pursuing and prevailed on federal claims in the state system. Here, plaintiffs prevailed only on one state claim in the

---

[11]   The statute in question, 42 U.S.C. § 2000e-5(k), located within the Civil Rights Act of 1964, provides, in pertinent part: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs. . . ." The Supreme Court has consistently held that fee-shifting statutes' similar language should be interpreted alike. <u>Buckhannon Bd. & Care Home, Inc. v. West Virginia</u>, 532 U.S. 598, 602-03 (2001); <u>Indep. Fed'n of Flight Attendants v. Zipes</u>, 491 U.S. 754, 759 n.2 (1989).

state court system.

In addition, several cases have rejected prevailing party status where the claims were not adjudicated on the merits by the federal court prior to resolution of the case by that court. See, e.g., Hewitt v. Helms, 482 U.S. 755 (1987) (holding that, in a § 1983 action for alleged due process violations, the plaintiff was not a prevailing party for purposes of § 1988(b) because the plaintiff received only "an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim" but did not receive relief on the merits); Hanrahan v. Hampton, 446 U.S. 754, 759 (1980) (finding that "procedural or evidentiary rulings" are not "matters on which a party could prevail for purposes of shifting his counsel fees to the opposing party under § 1988").

Finally, a plaintiff will not be considered to be the prevailing party where he or she wins a pendent claim but loses all § 1988(b) qualifying claims. See, e.g., Lund v. Affleck, 587 F.2d 75 (1st Cir. 1978); Haywood v. Ball, 634 F.2d 740 (4th Cir. 1980); Kelly v. City of Leesville, 897 F.2d 172 (5th Cir. 1990); Mateyko v. Felix, 924 F.2d 824 (9th Cir. 1990). Here, in the state court litigation, plaintiffs prevailed on their claim under the Kansas Constitution but ultimately failed on all other claims they litigated. Montoy v. State, 278 Kan. 769, 120 P.3d 306, 308 (2005). The Kansas courts would not have awarded attorneys fees based on this procedural posture. See Gumbhir v. Kan. State Bd. of Pharmacy, 231 Kan. 507, 517, 646 P.2d 1078 (1982) (holding that a plaintiff who prevailed on his state claim in state court litigation was not a prevailing party for purposes of § 1988(b) because the state claim "did not involve a common nucleus of operative

facts with a substantial federal claim because the [defendant] did not subject [the plaintiff] to a deprivation of rights, privileges or immunities secured to him by the Constitution and laws of the United States.   Thus [the plaintiff] is not a prevailing party as required since there was no 42 U.S.C. § 1983 violation upon which a civil rights attorney fee claim could be based.")   The state court, based on its holding in <u>Gumbhir</u>, would not have awarded plaintiffs attorneys' fees under § 1988.   Plaintiffs could have pursued their § 1988(b) qualifying claims in the state court litigation.   Their failure to do so may be some indication that they doubted their chances of prevailing on the merits of the claims.

Defendant State of Kansas' summation of its response to plaintiffs' request for a declaration of prevailing party status is an apt summary of the court's reasoning for its decision.

> All of the cases that Plaintiffs cite to support their request for declaration of 'prevailing party' status under Section 1988 wholly depend on the existence of certain factors - pendent jurisdiction, certification of state law questions, <u>Pullman</u> abstention, <u>Colorado River</u> abstention, "common nucleus of operative fact," - none of which is present in this case.

(Doc. 259 at 28.)

In the end, plaintiffs prevailed in the state court litigation on a state issue under the Kansas Constitution based on different elements and facts than the § 1988(b) qualifying claims before this court.   This court has never ruled on the merits on the claims before it.   All work done was done in the state court litigation.   Plaintiffs bear the burden of establishing their entitlement to an award of attorneys' fees under § 1988(b).   <u>Case v. Unified Sch. Dist. No. 233</u>,

157 F.3d 1243, 1249 (10th Cir. 1998); <u>Theno v. Tonganoxie Unified Sch.</u> <u>Dist. No. 464</u>, 404 F. Supp. 2d 1281, 1283 (D. Kan. 2005). Plaintiffs have not met this burden. Plaintiffs' motion for a declaration of prevailing party status as to defendant State of Kansas and defendants associated with the Kansas State Board of Education is DENIED.[12]

## IV.  CONCLUSION

Plaintiffs' motion to dismiss this case without prejudice is GRANTED and plaintiffs' motion for a declaration of prevailing party status is DENIED. All remaining pending motions, including but not limited to, the motion to intervene, are rendered moot and overruled. This case is <u>over</u>.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in <u>Comeau</u>

---

[12] While not determinative, the court cannot fail to observe that plaintiffs have not mentioned the amount of the fees claimed or how they have been calculated. It is the court's understanding that at least some of plaintiffs' counsels' fees have been paid (or at least advanced) by some of the state court plaintiffs, in particular the school district plaintiffs.

v. Rupp.   The response to any motion for reconsideration shall not exceed five pages.  No reply shall be filed.

　　　　IT IS SO ORDERED.

　　　　Dated this  __30th__  day of January 2007, at Wichita, Kansas.


　　　　　　　　　　　　　　　S/Monti Belot　　　　　　　　
　　　　　　　　　　　　　　　Monti L. Belot
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE